UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VICTOR LAMAR,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**DECISION AND ORDER**

1:18-CV-00829(JJM)

---

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Andrew Saul, the Commissioner of Social Security, that plaintiff was not entitled to Supplemental Security Income ("SSI") or Disability Insurance Benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [10, 14].[1] The parties have consented to my jurisdiction [17]. Having reviewed the parties' submissions [10, 14, 18], the action is remanded for further proceedings.

**BACKGROUND**

In July 2014, plaintiff filed applications for SSI and DIB, alleging that he became disabled on June 2, 2014 from pancreatitis, "lumbar issues" as result of a 2005 motor vehicle accident, acid reflux, and "limited pushing/pulling/lifting". [7], pp. 218-28, 257.[2] At the time, plaintiff was 30 years old.

---

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2] Plaintiff had filed a prior application, which was denied on August 25, 2010. [7], p. 253.

After the initial applications were denied, an administrative hearing was held on March 17, 2017 before Administrative Law Judge ("ALJ") Paul Georger, at which plaintiff, who was represented by counsel, and a vocational expert testified. Id., pp. 63-107. The medical evidence before ALJ Georger included a March 17, 2014 emergency room treatment record indicating that plaintiff sustained a shoulder strain from a workplace incident. Id., pp. 305-07, 448. At that time, Lloyd Brown, M.D., restricted plaintiff to not lifting, pulling, or pushing over 10 pounds until March 22, 2014. Id., p. 307.

On November 5, 2014, Samuel Balderman, M.D., performed a consultative examination. Id., pp. 309-12. At that time, plaintiff's complaints were chronic pancreatitis, lumbar spine pain, and reflux esophagitis. Id., p. 309. During the examination, plaintiff's gait was normal, he was able to walk on heels and toes without difficulty, was able to rise from a chair without difficulty, was able to squat to 60% of full, and used no assistive devices. Id., p. 310. He also had full range of motion in the shoulders, full flexion and extension of the cervical spine, no abnormality in the thoracic spine, full range of motion in his hips knees and ankles bilaterally, and no redness, swelling or effusion. Id., p. 311. A lumbar spine x-ray taken at that time showed straightening. Id., p. 313. Dr. Balderman assessed plaintiff with "minimal physical limitations", noting that that the physical findings are "minimal". Id., p. 312.

On February 24, 2015, plaintiff sustained a lifting injury at work, and was assessed with a thoracic spine strain and a right shoulder sprain or strain. Id., pp. 377-78. This resulted in a Worker' Compensation claim. Id., p. 73. Plaintiff's complaints of upper back pain continued, leading to treatment with a chiropractor and then a pain management specialist. Id., 448-52. In July 2015, plaintiff had tenderness of the thoracic spine at T6-T10, bilateral muscle spasms, trigger points of the paraspinal muscle, and increased pain on range of motion. Id., pp.

450-51. He was assessed with a 25% temporary impairment. Id., p. 452. These findings and complaints continued notwithstanding trigger point injections in September and October 2015. Id., pp. 438-440, 443-45. Plaintiff was assessed with thoracic spinal stenosis and myofascial pain syndrome. Id.

On or about October 16, 2015, plaintiff was involved in a motor vehicle accident. Id., p. 364. In January 2016, plaintiff was using a cane as a result of the motor vehicle accident. Id., p. 360. He was assessed with a thoracic disc herniation and treated with an epidural steroid injection. Id., pp. 433-34. However, a March 27, 2016 MRI of plaintiff's thoracic spine showed disc space narrowing, disc desiccation and concentric bulging of the discs at T7-8, without evidence of herniation or stenosis. Id., p. 432.

According to plaintiff, he also sustained an injury (or an exacerbation of a prior injury) to his cervical spine as a result of the motor vehicle accident. Id., p. 69. On May 27, 2016, plaintiff underwent elective cervical disc fusion. Id., p. 315. Nurse Practitioner Gretchen Tower's discharge instructions following that surgery were that plaintiff not lift, drive, or work. Id. At the administrative hearing, plaintiff testified that he still experienced constant neck and back pain, which sometimes radiated down into his left arm and hand and into his legs. Id., pp. 78-80.

On July 22, 2016, plaintiff was treated for "exacerbation of shoulder pain with increased activity, and assessed with a 50% shoulder disability. Id., p. 336. In April and September 2016, plaintiff underwent arthroscopic left and right knee surgeries as a result of the motor vehicle accident. Id., pp. 78, 326, 329, 341. At the hearing, plaintiff testified that walking increased his knee pain and he used a cane "[a]lmost all the time". Id., pp. 81, 92. According to plaintiff, his impairments prevented him from sitting or standing more than 30 minutes at one time or walking for more than approximately five minutes. Id., pp. 91-92.

In January 2017, plaintiff was referred to an orthopedic surgeon for arthropathy of the right shoulder. Id., 425. At that time, plaintiff's primary care physician, John Sauret, M.D., indicated that plaintiff had a 100% temporary impairment. Id., p. 426.

In his June 26, 2017 decision, ALJ Georger determined that plaintiff's severe impairments were degenerative disc disease of the thoracic spine, "status/post bilateral knee surgery, status/post cervical surgery", and chronic pancreatitis. Id., p. 50. He assessed plaintiff with the residual functional capacity ("RFC") to "perform light work . . . except lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, and sit, stand, or walk for six hours". Id., p. 52.

In reaching that RFC, ALJ Georger gave "great weight" to Dr. Balderman's opinion. Id., pp. 54-55. With respect to the restrictions imposed by Dr. Brown following plaintiff's March 2014 workplace injury and by Nurse Practitioner Tower following his May 2016 cervical spine surgery, ALJ Georger placed "some weight" on those opinions, but "lesser weight" in assessing long-term disability, explaining that the "opinions are clearly associated with acute circumstances that logically followed an injury and an invasive surgical procedure for which claimant had, at those time, little treatment follow-up". Id., p. 55.

Based on his RFC, ALJ Georger determined that plaintiff was capable of performing his past relevant work as a customer service representative, and therefore was not disabled from June 2, 2014 through his June 26, 2017 decision. Id. ALJ Georger's decision became the final decision of the Commissioner on May 30, 2018 when the Appeals Council, after considering additional evidence, found no basis to change the decision. Id., pp. 1-5. Thereafter, this action ensued.

# DISCUSSION

A. **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012). In seeking remand for further administrative proceedings, plaintiff argues that ALJ Georger "erred in giving great weight to Dr. Balderman's stale opinion and in not updating the record with functional opinion evidence". Plaintiff's Memorandum of Law [10-1], p. 8. In response, the Commissioner argues that ALJ Georger was entitled to rely on Dr. Balderman's opinion, which was "applicable to, at the very least, part of the relevant period", and that plaintiff cannot meet his burden of establishing that he cannot perform the RFC assessed by ALJ Georger. Commissioner's Brief [14-1], pp. 18-24.

B. **Did ALJ Georger Impermissibly Rely on Stale Medical Evidence?**

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." Clute ex rel. McGuire v. Commissioner of Social Security, 2018 WL 6715361,

*5 (W.D.N.Y. 2018). "The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018); Cruz v. Commissioner of Social Security, 2018 WL 3628253, *6 (W.D.N.Y. 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). *See also* Pritchett v. Berryhill, 2018 WL 3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes '*significant* deterioration' after a consultative examination, the examination may not constitute substantial evidence" (emphasis added)); Andrews v. Berryhill, 2018 WL 2088064, *3 (W.D.N.Y. 2018) (same). "A medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically . . . after the opinion demonstrates substantially similar limitations and findings." Pritchett, 2018 WL 3045096, *8. "A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding." Pagano v. Commissioner of Social Security, 2017 WL 4276653, *5 (W.D.N.Y. 2017).

      Here, much changed after Dr. Balderman's opinion was rendered. Plaintiff sustained a workplace injury to his thoracic spine and shoulder, followed by a motor vehicle accident, which led to cervical spine and bilateral knee surgeries, as well as a referral to an orthopedic surgeon for a possible shoulder surgery. Although Dr. Balderman's opinion was rendered approximately five months after the alleged onset date, his opinion took none of these subsequent injuries, exacerbations, and surgeries into account.

      For example, at the time of Dr. Balderman's examination in November 2014, plaintiff had no complaints of any knee, cervical spine, or thoracic spine pain. Nor was plaintiff

assessed with any impairments of the knees or his cervical or thoracic spines. Yet, ALJ Georger included those as severe impairments, and the record demonstrates that plaintiff received ongoing treatment for those impairments and complained of associated functional limitations. Under these circumstances, I conclude that Dr. Balderman's assessment was stale and could not constitute substantial evidence for ALJ Georger's determination. *See* Hartel v. Commissioner of Social Security, 2019 WL 4233120, *4 (W.D.N.Y. 2019) (finding opinion stale, where "no question exists that at the time [that opinion was rendered, the plaintiff ] had not been diagnosed with degenerative disc disease, an impairment the ALJ subsequently found to be severe at the time of his decision"); Morales v. Commissioner of Social Security, 2019 WL 1109572, *6 (W.D.N.Y. 2019) (an opinion "which contained no lifting restrictions and did not consider the impact of Plaintiff's chronic hernia condition, was indisputably rendered stale by Plaintiff's two subsequent hernia repair surgeries"); Girolamo v. Colvin, 2014 WL 2207993, *7 (W.D.N.Y. 2014) (holding that opinion that was rendered a year before the plaintiff's "second surgery . . . and the related diagnostic testing associated therewith" was stale); Biro v. Commissioner of Social Security, 335 F. Supp. 3d 464, 471 (W.D.N.Y. 2018) ("Dr. Toor's opinion, which was rendered nearly five years before the ALJ's decision and before Plaintiff's September 2013 knee injury and two subsequent surgeries, was stale and not based on the complete medical record"); Pagano, 2017 WL 4276653, *5 ("Dr. Miller's opinion was rendered before Pagano's ankle surgery and therefore does not account for his deteriorating condition"); Caswell v. Berryhill, 2018 WL 4404578, *4 (W.D.N.Y. 2018) (medical opinion stale where "[p]laintiff experienced multiple events after the exam that allegedly exasperated [*sic*] her symptoms or otherwise affected her condition, including two other car accidents, surgeries, trauma stemming from arrest, and a fall").

The Commissioner also argues that any error was harmless because, even if plaintiff was limited to sedentary work, the "Medical Vocational (Grid) Rules 201.27 and 201.28 would direct a finding of not disabled". Commissioner's Brief [14-1], p. 25. However, as laypersons, neither ALJ Georger nor I are in a position to discern plaintiff's limitations and prognosis, and I am unable to conclude that they would not be more restrictive than a limitation to the full range of sedentary work. *See* Williams v. Berryhill, 2017 WL 1370995, *3 (W.D.N.Y. 2017) ("an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence"); Trippett v. Commissioner of Social Security, 2018 WL 4268917, *4 (W.D.N.Y. 2018) ("[a]s a lay person, the ALJ was not in a position to interpret the bare medical findings in the record to conclude that [the plaintiff] retains the physical RFC to perform a range of light work"). ALJ Georger also did not rely on any other competent, non-stale medical opinion in assessing plaintiff's RFC. Therefore, I conclude that his opinion was not supported by substantial evidence.

**CONCLUSION**

For these reasons, plaintiff's motion for judgment on the pleadings [10] is granted to the extent that this case is remanded to the Commissioner for further proceedings consistent

with this Decision and Order, but is otherwise denied, and the Commissioner's motion [14] is denied.

**SO ORDERED**.

Dated: February 4, 2020

                                                               /s/ Jeremiah J. McCarthy
                                                               JEREMIAH J. MCCARTHY
                                                               United States Magistrate Judge